UNITED STATES of America, Appellee,

v.

Charles Ronald McELROY, Appellant.

No. 79–2516.

United States Court of Appeals,
Third Circuit.

Argued March 21, 1980.

Reargued Nov. 17, 1980.

Decided March 17, 1981.

Thomas S. White (argued), Robert L. Lackey, Asst. Federal Public Defenders, George E. Schumacher, Federal Public Defender, Pittsburgh, Pa., for appellant.

Sandra D. Jordan (argued), Paul J. Brysh, Frederick W. Thieman, Asst. U. S. Attys., Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge and ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS, GARTH, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

■ The National Stolen Property Act prohibits the transportation in interstate commerce of forged checks. In this appeal, the defendant argues that the prosecution had to prove that the checks were altered before they were taken over a state line. We conclude that if an unauthorized signature is placed on a check at any point during interstate movement, either before or after a state border is crossed, the statute has been violated. We find sufficient evidence to support the convictions on two counts charging such offenses. We do not, however, find adequate evidentiary support for a conviction alleging a violation of the Dyer Act and direct an acquittal on that count.

The defendant was indicted for transporting two forged checks from Youngstown, Ohio, to western Pennsylvania in violation of 18 U.S.C. § 2314 (1976) (counts I & III). In addition, he was charged with transporting a stolen automobile from Pennsylvania to Ohio in violation of 18 U.S.C. § 2312 (1976) (count II). A jury returned guilty verdicts on all three counts, and the court imposed concurrent sentences.

The checks forming the basis of the indictment were drawn on the Dollar Savings & Trust Company of Youngstown, Ohio, and had been stolen from a labor union in that city in early 1977. On discovery of the theft, the account was closed.

In October 1978, the defendant appeared at the Don Allen Chevrolet agency in Pittsburgh, Pennsylvania, and ordered an automobile for $6,706. He said his home was in Warrensville Heights, Ohio, and that he would return the following day with a credit union check in payment. He reappeared as promised and said that the car was to be titled in Ohio, signed forms to that effect, and tendered a check on the Dollar Savings Bank of Youngstown already drawn in the amount of $6,909. The car was delivered to the defendant, and he drove off. The check was one of those stolen from the union, and the signature was forged. The Don Allen Company called the Youngstown bank the following morning and learned that the union account had been closed, so no attempt was made to negotiate the check.

The evidence applicable to count III of the indictment revealed a similar method of operation. In December 1978, the defendant went to Rini Boat Sales in Beaver, Pennsylvania, and inquired about purchasing a boat. He telephoned a week later and told the dealer that he was going to buy a boat and trailer, but had to get a check from his credit union. He telephoned again on the evening of the same day and asked the proprietor to wait, stating that he was at rest stop on the Ohio Turnpike.

The defendant arrived at Rini Boat Sales in a pickup truck bearing Ohio plates that he said was owned by a friend. He delivered a check already imprinted by a check writing machine. The defendant was given a certificate stating that the trailer was to be registered in Ohio and drove away with the boat and trailer. This check also had been stolen from the union and the signature forged. The proprietor telephoned the Youngstown bank the following morning and, learning that the account had been closed, made no attempt to cash the check.

Count II of the indictment charged that the defendant transported the car he had stolen from Don Allen to Ohio. There was no direct evidence to show where the car was driven after it left the dealer's premises in Pittsburgh.

Common to all three counts was the testimony of an FBI agent that the defendant admitted living in East Liverpool, Ohio, during the time the checks were delivered to the auto and boat dealers.

## I. THE FORGED CHECK COUNTS

The defense concedes that the only issue before us is whether the interstate commerce requirement for federal criminal jurisdiction has been satisfied. This issue is purely one of statutory interpretation, no contention having been made that a commerce clause nexus would fail to satisfy constitutional prerequisites for federal jurisdiction.

In pertinent part, 18 U.S.C. § 2314 states, "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any ... forged ... securities ..., knowing the same to have been ... forged ... [s]hall be fined ... or imprisoned ... or both." [1] Section 10 of the same title provides, in part, "The term 'interstate commerce', as used in this title, includes commerce between one State ... and another State...."

The defendant contends that to convict, the prosecution had to show that the check was forged before it crossed a state line. The government argues that if the check was taken from Ohio to Pennsylvania, even if the actual forgery occurred in the latter state, the violation was complete because the interstate character of the transportation persisted.

The trial court accepted the government's position and charged that "transportation within the destination state here, Pennsylvania, may be considered transportation in interstate commerce if it is a continuation of the movement that began out of state."

1. 18 U.S.C. § 2311 (1976) provides that the term "securities" includes "any ... check."

There is surprisingly little variety to the case law applying § 2314 to forged check transactions. Most opinions hold that the interstate commerce requirement is satisfied if, after the defendant negotiates a forged check, it travels interstate in the bank collection process. *See, e. g., Pereira v. United States,* 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *United States v. Newson,* 531 F.2d 979 (10th Cir. 1976). "There is no requirement of actual physical transportation by a defendant and it is sufficient that a defendant cause the instrument to be transported by the negotiation process." *Id.* at 981; 18 U.S.C. § 2(b) (1976). To the same effect, see *United States v. Sciortino,* 601 F.2d 680, 683 (2d Cir. 1979); *United States v. Ackerman,* 393 F.2d 121, 122 (7th Cir. 1968). As the Court of Appeals for the Tenth Circuit pointed out in *Newson,* "The essence of the offense is the fraudulent scheme itself and the interstate element is only included to provide a constitutional basis for the exercise of federal jurisdiction." 531 F.2d at 98.

An alternative method of proof emerged from another line of cases beginning with *Castle v. United States,* 287 F.2d 657 (5th Cir. 1961). There, the government proved that the defendant forged money orders in Pennsylvania and later cashed them in Texas. No question was raised about the applicability of § 2314 in that factual setting, and there is no doubt that the interstate commerce aspect was satisfied.

By the curious metamorphosis sometimes seen in decisional law, some courts have built *Castle* into a doctrine requiring that if the check was not collected through the interstate banking system, the prosecution must prove that the securities were forged before being transported over a state line. A coincidence of fact in *Castle* thus became a jurisdictional element of prosecution. For example, in *United States v. Owens,* 460 F.2d 467 (5th Cir. 1972), the court held, without analysis of the jurisdictional phase of the statute, that if the forgery of money orders occurred in Louisiana where there was an attempt to cash them, no offense under § 2314 had occurred even though the money orders had been stolen in New Jersey.

We note an important factual distinction between *Owens* and this case. In the former there was no evidence to show that the defendant, a seventeen year-old, had transported the money orders, in altered or unaltered form, from New Jersey to Louisiana. Here, by contrast, there is testimony to support findings of interstate journeys by the defendant from Ohio to Pennsylvania for the purpose of engaging in a commercial transaction, during which he had the checks in his possession. *See* p. 279 *infra.*

Nevertheless, the *Owens* opinion makes clear that the court believed the government was required to prove that the money orders had been forged in New Jersey, "prior to their interstate transportation." *Id.* at 471. And other courts of appeals reading *Owens* this broadly have followed it without any examination of its validity. *See United States v. Sparrow,* 635 F.2d 794 (10th Cir., 1980) (in banc); *United States v. Hilyer,* 543 F.2d 41 (8th Cir. 1976). *See also United States v. Lee,* 485 F.2d 41 (4th Cir. 1973). It is this line of cases that the defendant urges upon us here.

We begin by examining the history and language of § 2314. It derives from § 3 of the National Stolen Property Act. Ch. 333, 48 Stat. 794 (1934). In *United States v. Sheridan,* 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359 (1946), the Court emphasized that the Act established a scheme of federal-state cooperation designed to apprehend and punish criminals "whose offenses are complete under state law, but who utilize the channels of interstate commerce to make a successful getaway and thus make the state's detecting and punitive processes impotent." *Id.* at 384, 67 S.Ct. at 335. The Court also said that the transportation of forged checks is not to be torn from its setting and given a status distinct from other forbidden transportations. "The legislative history shows that the purpose [(of the Act)] was to bring operators in these false securities into substantially the same reach of federal power as applied to others

dealing in stolen goods, securities and money." *Id.* at 389, 67 S.Ct. at 337. We may, therefore, look to decisions under other sections of the Act as an aid in construing the meaning of transportation in interstate commerce.

The language of § 2314 does not state that the checks must be forged before interstate transportation begins. Transportation in interstate commerce has a broader meaning.[2]

The fraudulent acts proscribed by the statute do not pose any threat peculiar to interstate, as contrasted with intrastate, activity, and it is obvious that the prohibited activities were already the subject of state criminal statutes. As the Court pointed out in *Sheridan*, the purpose of the National Stolen Property Act is to provide federal assistance in what previously had been exclusively state affairs. Legislative modifications in the Act have not altered this conclusion. *See United States v. Patten,* 345 F.Supp. 967, 968 (D.P.R.1972). The interstate commerce language was included purely for jurisdictional purposes and should be construed to carry out this congressional intention. *United States v. Ludwig,* 523 F.2d 705 (8th Cir. 1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976); *see Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977); *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

A person who travels from one state to another for the purpose of purchasing an article in the destination state is moving in interstate commerce, and the character of such a trip does not cease upon entering the destination state. It continues until the purpose of the journey has been achieved—indeed, more likely until a return has been made to the point of origin. Understandably, therefore, the courts have found interstate movement both before and after a state line has been crossed.

A persuasive illustration of federal jurisdiction attaching before movement over a border may be found in an opinion examining the analogous title 18 concept of foreign commerce. *See* 18 U.S.C. § 10. In *United States v. Ajlouny,* 629 F.2d 830 (2d Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981), cargo originating in New York and destined for Doha, Qatar, was seized in a customs control area of a Brooklyn pier. Holding that the cargo was in foreign commerce under § 2314 even though it had not moved beyond the borders of the United States—or for that matter the state—the court stated, "Congress was not aiming only at stolen goods moving across a technical boundary line but also wanted to reach shipments in the course of such a crossing . . . ." *Id.* at 837.

The continuing presence of federal jurisdiction after a state line crossing was examined in *United States v. Tobin,* 576 F.2d 687 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978). There the court construed a companion section of the National Stolen Property Act, 18 U.S.C. § 2315 (1976). That section speaks of stolen goods "moving as, or which are a part of, or which constitute interstate or foreign commerce." Although this language differs from that in § 2314, we find no reason to apply a different meaning in the factual context presented here. In *Tobin* the court held that so long as the movement of stolen items within the destination state can be considered a continuation of the movement that began out of state, the prerequisite of § 2315 jurisdiction was met.

---

2. Neither the courts nor the commentators have thoroughly examined the significance of the title-wide definition of interstate commerce in 18 U.S.C. § 10. The courts have examined the definition in relation to the particular offense charged, and the commentators have been more concerned with how far Congress might go, rather than with how far it has gone. *See, e. g.,* Pauley, *An Analysis of Some Aspects of Jurisdiction under S. 1437, the Proposed* Federal Criminal Code, 47 Geo.Wash.L.Rev. 475 (1979); Quigley, *The Federal Criminal Code Revision Plan: An Epitaph For The Well-Buried Dead, id.* at 459; Stern, *The Commerce Clause Revisited—The Federalization Of Interstate Crime,* 15 Ariz.L.Rev. 271 (1973); and Note, *The Scope Of Federal Criminal Jurisdiction Under The Commerce Clause,* 1972 L.Forum 805.

*Tobin* was cited with approval in *United States v. Garber*, 626 F.2d 1144 (3d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981), where we held that a 28 day delay after arrival in a destination state did not require a finding that goods had come to rest for the purposes of a prosecution under 18 U.S.C. § 659, a statute with jurisdictional language almost identical to that in § 2315. Thus, under the National Stolen Property Act, the interstate commerce prerequisite may be satisfied even before a state border is crossed and may continue some time thereafter in the destination state.

In this case, therefore, a trip by the defendant from Ohio to Pennsylvania to transact business would put him in interstate commerce. The nature of this movement did not change the instant he crossed the border into Pennsylvania. At the very least, it continued until he completed his business transactions in the destination state. At some time during this travel, the defendant transported the checks in a forged condition and later delivered them to the car and boat dealers. It is immaterial whether the signatures were forged in Ohio or in Pennsylvania. If at any point in the interstate movement the check was in a forged condition, the statute was satisfied. We conclude, therefore, that the district court's charge to the jury was not erroneous.

The defendant argues, however, that the evidence is insufficient to establish any transportation of the checks in altered or unaltered form, much less interstate transit. In passing on this contention, we must sustain the verdict if there is substantial evidence to support it. Of course the evidence must be viewed in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

There was testimony that the defendant lived in Ohio, that he told the auto salesman that he intended to get a check from his credit union, and that he wanted the car titled in Ohio. When the defendant returned to Don Allen's, he did so in an automobile, thus establishing his ability to travel the short distance between Pittsburgh and the Ohio border. The check he presented was drawn on an Ohio bank. In the case of the boat purchase, there is the additional fact of a telephone call from the defendant in which he stated he was on the Ohio Turnpike enroute to Beaver, Pennsylvania. Moreover, he arrived in a vehicle bearing Ohio license plates.

The checks had been stolen in Ohio. From the evidence, no inference could be drawn that the checks were in Pennsylvania before the defendant made the trips from Ohio, and unsupported speculation of that nature does not require the convictions be set aside. As we pointed out in another § 2314 prosecution, *United States v. Blair*, 456 F.2d 514, 517 n.3 (3d Cir. 1972), the proposition that the government's evidence must exclude every reasonable hypothesis inconsistent with guilt was rejected in *United States v. Allard*, 240 F.2d 840 (3d Cir.), *cert. denied*, 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761 (1957). We continue to adhere to that position, and "[t]he circumstantial nature of the evidence does not alter [our] conclusion." *United States v. Hamilton*, 457 F.2d 95, 98 (3d Cir. 1972); *United States v. Blair, supra* at 518.

The jury was free to find that on each occasion the defendant made a trip from Ohio to Pennsylvania, carrying with him a check that was forged either in Ohio or Pennsylvania, but in any event before the interstate travel terminated. *Cf. United States v. Presler*, 610 F.2d 1206, 1212–13 (4th Cir. 1976) (no evidence, direct or circumstantial, indicated that defendant actually made interstate journey). We therefore conclude that the judgment on counts I and III must be affirmed.

## II. THE AUTO THEFT COUNT

Section 2312 of title 18 prohibits the transportation in interstate commerce of a stolen motor vehicle. Here it is alleged that the defendant stole the automobile from Don Allen when he gave a worthless

check in payment.[3] Again, the defendant challenges the sufficiency of the government's evidence of transportation in interstate commerce because the auto was never seen in Ohio.

The concept of transportation in interstate commerce carries the same jurisdictional significance here as it does with respect to § 2314. For similar reasons, it would not have been necessary for the government to prove that the automobile crossed the Ohio-Pennsylvania border. Like the United States Court of Appeals for the Fifth Circuit,

> "[w]e think the offense does not necessarily require the actual, physical driving *across* a state line by the accused. The offense is interstate transportation and, assuming the presence of the requisite knowledge and guilty purpose, any driving, *whether wholly within the state of origin, state of destination, or from and to,* if done as a substantial step in the furtherance of the intended interstate journey is, we think, within the act."

*Barfield v. United States*, 229 F.2d 936, 939 (5th Cir. 1956).

■ Nevertheless, the jury was instructed, without objection from the government, that to convict it had to be satisfied that the car was driven "across the state line from one state to another." We find that there is insufficient evidence to support the defendant's conviction under this instruction. There is no evidence of record that the automobile was ever taken to Ohio. The vehicle was never seen after it left Don Allen's lot.

It may be argued that the jury could have found the defendant intended to title the car in Ohio, and perhaps infer from the fact that he lived there that he would take it home with him. Nevertheless, we conclude that this is insufficient to establish the fact that the car was actually driven into Ohio. Since the record is completely silent on this point, we conclude that, under the instruction given, the evidence was in-

sufficient to support count II, and therefore, that charge should not have been submitted to the jury. The government's failure to object to this instruction bars a retrial under proper instructions, Fed.R. Crim.P. 30, so we must direct an acquittal, *see Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

Accordingly, the judgments on counts I and III will be affirmed. The judgment on count II will be vacated, and the matter will be remanded to the district court for the entry of judgment of acquittal.

ADAMS, Circuit Judge, with whom Chief Judge SEITZ joins, concurring in part and dissenting in part.

I concur with the majority's affirmance of McElroy's conviction for transporting forged checks in interstate commerce. I find, however, that I must part company with the majority when it reverses McElroy's conviction under the Dyer Act, 18 U.S.C. § 2312.

Three elements comprise the offense of interstate transportation of stolen motor vehicles, the offense embodied in the Dyer Act. The government must establish (1) that the vehicle was stolen; (2) that the defendant transported it in interstate commerce; and (3) that the defendant knew, at the time he transported it, that the vehicle had been stolen. *See United States v. Gresham*, 585 F.2d 103, 106 (5th Cir. 1978). There is no challenge to the sufficiency of the government's proof of the first and third elements. An automobile purchased with a worthless check is "stolen" for purposes of the Dyer Act, *see United States v. Turley*, 352 U.S. 407, 416, 77 S.Ct. 397, 402, 1 L.Ed.2d 430 (1957). Moreover, possession of the vehicle may be sufficient for the jury to draw the inference of guilty knowledge, *see Barfield v. United States*, 229 F.2d 936, 939 (5th Cir. 1956). Because McElroy had possession of the automobile when he drove off with it from Don Allen Chevrolet, he

---

**3.** Acquiring possession of a vehicle in this fashion renders it "stolen" within the meaning of the Dyer Act. *United States v. Wilson*, 436 F.2d 122, 124 (3d Cir.), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971).

may be presumed, in the absence of an exculpatory explanation, to have had knowledge that the car was stolen.

The only remaining issue is whether the jury might have inferred from the evidence in the record that McElroy injected the stolen automobile into the stream of interstate commerce. The majority acknowledges that the prosecution, in order to make out this component of the offense, need not show that the defendant was in control of the vehicle at the time it crossed a state boundary, or even that the car actually moved from one state into another. As long as the defendant inaugurated an intended interstate journey, he has violated the Act. Nonetheless, the majority apparently concludes that the evidence in the case at bar fails to demonstrate that McElroy's automobile, stolen in Pennsylvania, was ever bound for Ohio.

Although the issue is not completely free from doubt, I would hold that the government proffered adequate evidence to support the jury's verdict. When McElroy obtained the car from Don Allen Chevrolet in Pittsburgh, he advised the salesman that he lived in Ohio and that he intended to register the automobile in Ohio. McElroy paid for the car with checks stolen from a union office in Youngstown, Ohio. After his arrest, McElroy admitted to an FBI agent that, at the time of the alleged offense, he resided in East Liverpool, Ohio. In addition, the evidence at trial indicated that, after obtaining the Corvette, McElroy returned to Ohio and some time later ventured back into Pennsylvania to purchase a boat with another stolen check.

Admittedly, these items of evidence do not show conclusively that McElroy drove the stolen vehicle into Ohio. But a court reviewing a jury verdict must regard the evidence in the light most favorable to the government, see *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and must accept as established all reasonable inferences that tend to support the jury's determination, see *United States v. Briddle*, 430 F.2d 1335, 1337–38 (8th Cir. 1970). I believe that the evidence

of record provides a sufficient basis from which a jury might infer that, at the time McElroy departed from the Pittsburgh automobile dealer, he contemplated driving the stolen vehicle into the State of Ohio. Moreover, while it may be argued that the facts are consistent with a design on the part of McElroy to use the automobile exclusively in Pennsylvania, and perhaps to dispose of it there, the record is completely barren of any evidence to show that this was McElroy's intent.

The majority correctly points out that the trial judge's instructions may have led the jury to believe that, in order to convict, they would have to satisfy themselves that the stolen vehicle actually crossed the border between Pennsylvania and Ohio. Under the majority's own interpretation of the Dyer Act, this instruction probably misconstrued § 2312 to the advantage of the defendant. But while the government's failure to make timely objection might preclude it from taking exception to the instruction before this Court, I do not agree with the majority that the prosecutor's silence should affect our disposition of McElroy's claim to have been convicted on insufficient evidence. In light of the trial judge's charge, the verdict manifests the jurors' conclusion that McElroy transported the stolen car into Ohio. *A fortiori*, the verdict reflects the judgment, logically entailed from the crossing of state lines, that McElroy inaugurated an interstate journey. Because proof of this latter proposition suffices to establish the interstate transportation element of the Dyer Act, and because, in my opinion, the jury could properly infer from the evidence that McElroy embarked on an interstate venture, I would not disturb the jury's conclusion that McElroy violated § 2312.

Accordingly, I dissent from Part II of the majority opinion.

GARTH, Circuit Judge, concurring and dissenting.

I concur with the majority's decision to vacate McElroy's conviction and to enter a judgment of acquittal on Count II. I dis-

sent from the majority's affirmance of McElroy's convictions on Counts I and III.

I.

The clarification of the requirements necessary to support a conviction under 18 U.S.C. § 2314 (1976) is of overriding concern in this case. In relevant part, § 2314 reads:

> Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamp, knowing the same to have been falsely made, forged, altered, or counterfeited . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

The majority opinion in analyzing the statute, focuses only on the issue of whether the checks involved had to be forged before they crossed from one state (here Ohio) to another state (here Pennsylvania). The majority of this court disagrees with the recent Tenth Circuit *en banc* decision, *United States v. Sparrow*, 635 F.2d 794 (10th Cir. 1980) (*en banc*) *reversing United States v. Sparrow*, 614 F.2d 229 (10th Cir. 1980), which held that the statute required proof that the checks were already forged at the time they crossed the state line. The majority here holds that "[i]f at any point in the interstate movement the check was in a forged condition, the statute was satisfied." Maj. op. at 279.

To this point I am in full agreement with my colleagues who form the majority, for I too agree that the checks do not have to be in a forged condition when they cross from one state to another. In my view it is immaterial in which state the checks were forged, providing they ultimately are found to be forged instruments in a state different from the state where they originated.

Thus, to this extent I too adhere to the "anti-*Sparrow*" construction announced today by the majority. However, adherence to this interpretation cannot end our inquiry in this case. By limiting its analysis to the *forgery* element of the statute, i. e., the state in which the checks were forged, the majority has failed to address the element of § 2314 which requires proof that it was the defendant who transported the checks or who caused the checks to be transported in interstate commerce—in this case from Ohio to Pennsylvania.

Assuming[1] that I have read the majority's opinion correctly in this respect, I am

---

1. I am "assuming" that under the majority's analysis, which concentrates solely on the forgery element of the statute, evidence of forged checks drawn in Ohio but found in Pennsylvania would be sufficient to sustain a conviction. Thus, as I read the majority opinion, the "transporting" element of the statute is deemed to be subsumed within and satisfied by the "forgery" element. Yet I acknowledge that in addressing the sufficiency of the evidence, the majority opinion discusses inferences that a jury could draw that McElroy had brought (transported) the checks from Ohio to Pennsylvania. Maj. op. at 279. If that discussion is intended to require proof of a *transporting* element as well as a *forgery* element, then I have no disagreement with the majority as to its standard, but only as to the sufficiency of the evidence applied to that standard. However, my reading of the majority opinion leads me to believe that it has erred in the standard to which it subscribes, because it has apparently by its construction, read out of § 2314 the element of "[w]hoever . . . transports in interstate . . . commerce . . .".

The charge given by the district court in this case suffers from the same ambiguity and de-

fect that I have found in the majority's analysis. Under the district court's charge, a jury could have found that the interstate commerce requirement was satisfied if the checks were drawn in Ohio (which is undisputed), found their way into Pennsylvania (which is undisputed), and were carried by McElroy *in* Pennsylvania (which is also undisputed), even though no proof existed that McElroy had transported the checks *from* Ohio *to* Pennsylvania. The district court charged at one point that:

> transportation within the destination state here, Pennsylvania, may be considered transportation in interstate commerce if it is a continuation of the movement that began out of state.

It then charged:

> Now, if you believe that the Government has shown that the Defendant transported the checks while they were in a forged condition within the State of Pennsylvania, the requirements of the law are satisfied if that transportation was part of interstate commerce. In other words, the check had to originate at sometime in Ohio and had to have been transported at sometime in Pennsylvania in order to effect interstate com-

obliged to dissent from its analysis and the result which it has reached.

## II.

As I understand the current jurisprudence of § 2314, the cases interpreting the interstate requirement of that statute fall into two discrete groups.

The first of these are cases in which the interstate component is satisfied by the *negotiation* of a check drawn in one state and presented in another. In those cases, of which *United States v. Newson,* 531 F.2d 979 (10th Cir. 1976), is representative, the mere negotiation of a check is deemed to provide proof of interstate commerce because by the defendant's act of negotiation, a check clearance procedure which is interstate in scope, has been triggered. Thus the defendant in such cases has caused the check to be transported in interstate commerce, even though he himself has not physically transported the check from one state to another.

The second group of cases are those where the defendant has actually transported the check, whether in a forged or unforged condition, from one state to another, thus satisfying the interstate requirement. That situation is reflected in cases such as *United States v. Lewis,* 560 F.2d 901 (8th Cir. 1971); *United States v. Sparrow, supra.* Thus, even adopting the "anti-*Sparrow*" interpretation which the majority adopts, I

find no authority in the cases for dispensing with a need to prove in a case such as this one, that: (1) either the checks were caused to be transported by McElroy between Ohio and Pennsylvania, or (2) that McElroy with the checks travelled from Ohio to Pennsylvania.

In our present case, neither proof of negotiation nor proof of transportation in interstate commerce is present. Here no check has been negotiated through check clearance procedures. To the contrary, the proofs in Counts I and III reveal that upon receiving the checks, the boat and car dealers did not deposit them. In that sense the checks were never negotiated and thus never satisfied the interstate requirement because they never became involved in check clearance procedures.[2]

Nor does the record disclose that McElroy actually carried or transported the checks from Ohio to Pennsylvania.[3] It is undisputed that the checks were drawn on an Ohio bank, and it is undisputed that McElroy possessed them in Pennsylvania, but the record is devoid of proof as to who brought the checks from Ohio to Pennsylvania, or indeed how they came into McElroy's possession in Pennsylvania.

As I read the record, there is not enough evidence for a jury to have found beyond a reasonable doubt, resolving all inferences in favor of the government, *see Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61

merce. So the Government must prove this Defendant transported the checks involved in Counts 1 and 3 of the indictment in interstate commerce between Ohio and Pennsylvania, but need not prove the place in Ohio from which the checks started or from where the Defendant started.

App. 234a–236a

It appears to me that the last paragraph of the charge which I quote above more closely resembles the position which I have taken than the position advocated by the majority, but when it is combined with the earlier quoted instruction, I suggest that the charge is not clear. Nowhere in the charge does there appear an unequivocal statement that McElroy himself had to transport the checks from Ohio to Pennsylvania.

**2.** It should not be forgotten that McElroy was not indicted for having caused the checks to be transported from Pennsylvania to Ohio, the

route which the checks would have travelled had they entered the bank collection process in Pennsylvania. The indictments read "cause to be transported . . . from . . . Ohio, to . . . Pennsylvania. . . ." Moreover, the indictments are drawn in the conjunctive and thus would require proof by the government that McElroy transported *and* caused to be transported the forged checks in interstate commerce. The indictments both read in pertinent part:

CHARLES RONALD McELROY a/k/a WILLIAM JONES, *did* with unlawful and fraudulent intent, *transport and cause to be transported in interstate commerce from* Youngstown, *Ohio, to* the Western District of *Pennsylvania,* a certain falsely made and forced security . . . (emphasis added)

**3.** I recognize that as to this issue the majority differs with my view of the evidence.

L.Ed.2d 560 (1979), that McElroy transported the checks from Ohio to Pennsylvania. From all that can be determined from this record, McElroy at the times relevant to the events charged in this case, never left Pennsylvania. The record is completely equivocal as to how or where or from whom McElroy obtained the checks, and nothing appears in the record from which a jury could reasonably infer beyond a reasonable doubt that McElroy himself brought the checks from Ohio to Pennsylvania. The mere fact that McElroy made a telephone call to a dealer stating that he was in Ohio on the way to Pennsylvania is insufficient in my view to infer that he was indeed in Ohio at that time, particularly when there is testimony that he drove into the boat dealer's lot from a dead end street. App. at 77A. It is undisputed that McElroy deliberately misled the boat and car dealers in other respects. Thus, it is not reasonable to infer that his statements concerning his intentions to return to Ohio and his statements as to his then whereabouts were not made for the same purpose.

### III.

Having found the evidence insufficient to sustain McElroy's conviction on Counts I and III, I would vacate the judgments of conviction and enter judgments of acquittal. When a conviction is vacated due to insufficient evidence, double jeopardy bars a retrial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Hudson v. State of Louisiana*, —— U.S. ——, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). Even if the district court erroneously excluded evidence that would prove that McElroy had indeed transported the checks in interstate commerce, double jeopardy would prevent a new trial. *Burks* states that "it should make no difference that the *reviewing* court rather than the trial court, determined the evidence to be insufficient." *Id.* 437 U.S. at 11, 98 S.Ct. at 2147. If the district court had entered a judgment of acquittal in this case, the government would have had no right to appeal, even if the district court's decision was tainted by its erroneous exclusion of the government's

evidence. *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

Thus, I fail to understand why an erroneous evidentiary ruling made by the district court should be deemed to have deprived the government of its "fair opportunity to offer whatever proof it could assemble." *Burks*, 347 U.S. at 16, 98 S.Ct. at 2150, quoted in *Hudson v. State of Louisiana*, —— U.S. at ——, 101 S.Ct. at 972. While it is true that the government must have a fair opportunity to offer its proof, no case to my knowledge has gone so far as to hold that a district court's erroneous exclusion of government evidence may be claimed as a denial of that fair opportunity. Thus, in considering whether there is sufficient evidence to uphold the conviction, we are instructed to consider only the evidence admitted by the trial court. Since that evidence in this case is insufficient in my view, I conclude that a judgment of acquittal must be entered.

I would consequently vacate the convictions and direct the entry of judgments of acquittal on all three counts.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring in part and dissenting in part.

I concur with so much of the majority's decision which vacates the judgment of conviction and the entry of a judgment of acquittal on Count Two. I dissent from the majority's affirmance of the convictions on Counts One and Three. Though Judge Weis has written a thoughtful opinion, I believe the views expressed by Judge McKay in *United States v. Sparrow*, 635 F.2d 794 at 796–797 (10th Cir. 1980) (in banc), express the correct statement of law as to 18 U.S.C. 2314:

> [T]he plain meaning of the statute requires the prosecution to show that the security was in a forged or altered condition at the time of its interstate passage. The rule is clear that a criminal statute is limited to its terms; it "must be strictly construed, and any ambiguity must be resolved in favor of lenity." *United*

*States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); see also *United States v. Campos-Serrano*, 404 U.S. 293, 297, 92 S.Ct. 471, 474, 30 L.Ed.2d 457 (1971); *United States v. Fisher*, 456 F.2d 1143, 1145 (10th Cir. 1972).

The three circuits which have interpreted this section have all given it this meaning. *See United States v. Sparrow; United States v. Hilyer*, 543 F.2d 41 (8th Cir., 1976); *United States v. Owens*, 460 F.2d 467 (5th Cir. 1972). *Cf. United States v. Lee*, 485 F.2d 41 (4th Cir. 1977). Indeed, at oral argument in this case, the government conceded that the section under which McElroy was indicted required that the check be in a forged state when it crossed state lines.

In support of its interpretation, the majority relies on the broad purpose of the National Stolen Property Act "to bring operators in these false securities into substantially the same reach of federal power as applied to others dealing in stolen goods, securities, and money." Majority Opinion at 277, *quoting United States v. Sheridan*, 329 U.S. 379, 389, 67 S.Ct. 332, 337, 91 L.Ed. 359 (1946). I agree that the government possesses the authority under the Constitution and the Act to prosecute McElroy even though the check may not have been forged when it crossed state lines. But this broad purpose is satisfied by prosecution under other provisions of the Act. Section 18 U.S.C. 2314 also holds criminally liable any person who "with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security or tax stamps. . . ." Transportation of the unsigned check by McElroy across state lines with the intent of forging it would have satisfied this standard, and the intent of the Act. Unfortunately, McElroy was not charged under this paragraph. Thus, the question we must address is not whether the federal government could have prosecuted McElroy under the Act for his actions, which it clearly could, but whether the specific section under which McElroy was indicted reached that activity.

On this question I believe there is some ambiguity. The wording of the section suggests, as other courts have held, that it is a forged check that must be transported across state lines, not a check that is later forged. Under the majority's analysis, on the other hand, if one individual transported an unforged check across state lines and handed it to a second person, who forged the check and carried it across the street, the second person could be convicted of *transportation* of a forged check in interstate commerce. This is a reasonable interpretation, but not the most apparent.

The majority's analogy to Section 2315 is not determinative. Section 2315 holds individuals liable for "receiving," "selling," or "storing" a forged security "moving as, or which is part of, or which constitute, interstate commerce." Unlike the act of "transportation," the "sale," "receipt" or "storage" of forgeries obviously cannot occur, except in unusual circumstances, across state lines. Thus, a broader interpretation of the special clause included in that section —"moving as, or which is part of, or which constitute"—is logical. No such broad interpretation is impelled by the language of Section 2314. Because criminal statutes must be "resolved in favor of lenity," I would interpret the prohibition on transporting a forged check in interstate commerce under Section 2314 to require movement of the forged check across state lines. Thus, as I see it, the district court judge's charge on Counts One and Three was improper.

Finally, I do not believe that the government should be prohibited from retrying the defendants on these two counts. From my review of the record, there was substantial evidence for a jury to infer that the check involved in Count Three had been forged before it was brought into Pennsylvania. Thus, retrial of the defendants on this count would not contravene the Double Jeopardy Clause. As to Count One, on the other hand, there was probably insufficient evidence, as a matter of law, for the jury to infer that the check had been forged before

it entered interstate commerce. The absence of such evidence, however, is attributable to an unmeritorious objection made by the defendant which, in my opinion, was improperly sustained by the court. Its decision excluded evidence that had been proffered by the government to establish the transportation in interstate commerce jurisdictional nexus. Since the exclusion of this jurisdictional evidence on Count One was attributable solely to the defendant's objection, I would not find that another prosecution on Count One is prohibited by the Double Jeopardy Clause.[1]

1. The Supreme Court's recent decisions in *Hudson v. State of Louisiana,* —— U.S. ——, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), and *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), would not preclude retrial of the defendant. These cases merely hold "that a reversal 'due to a failure of proof at trial,' where the state received a 'fair opportunity to offer whatever proof it could assemble,' bars retrial on the same charge." *Hudson v. State of Louisiana,* —— U.S. at ——, 101 S.Ct. at 972, quoting *Burks v. United States,* 437 U.S. at 16, 98 S.Ct. at 2150. In this case, the government did not have a "fair opportunity to offer whatever proof it could assemble."