J-S21012-16

2016 PA Super 100

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DERRICK TT WALKER, | |
| Appellant | No. 485 EDA 2014 |

Appeal from the Judgment of Sentence January 23, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0007470-2011
CP-51-CR-0007471-2011
CP-51-CR-0007472-2011
CP-51-CR-0007473-2011

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY BENDER, P.J.E.:                    **FILED MAY 13, 2016**

Appellant, Derrick TT Walker, appeals from the judgment of sentence of an aggregate term of 4 to 10 years' incarceration, imposed after a jury convicted him, in four separate cases, of four counts of unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1), four counts of corruption of minors, 18 Pa.C.S. § 6301(a)(1)(i), and one count each of unlawful restraint, 18 Pa.C.S. § 2902(a)(1), luring a child into a motor vehicle or structure, 18 Pa.C.S. 2910(a), and simple assault, 18 Pa.C.S. § 2701(a)(1). On appeal, Appellant

_____

[*] Former Justice specially assigned to the Superior Court.

challenges the sufficiency of the evidence to sustain his convictions. After careful review, we affirm.

The facts of Appellant's cases, which were consolidated for trial, can be summarized as follows:[1]

> On May 4, 2011, four days shy of her [tenth] birthday, Z.A. was walking to school at around 7:15 a.m. when she stopped at a store at 29th and Moore Streets to buy juice and chips. While inside shopping, she looked up at a mirror hanging on the wall and noticed [A]ppellant,[2] whom she did not know, staring at her. She went to the counter to pay for her items, and [A]ppellant followed her, stood next to her, and continued to stare at her. Appellant left the store, and when Z.A. walked outside shortly thereafter, she saw [A]ppellant in a parked red car. As she walked down 29th Street, [A]ppellant drove up next to her, stopped the car and said "Come here[.]" Z.A. ran to school and [A]ppellant drove off. After school, Z.A. told her aunt … what happened. Her aunt called the police, who came to the house and took a statement from Z.A.

> L.C. testified that she was nine years old on May 6, 2011. On that date at around 6:45 a.m., she was standing alone at the school bus stop at 12th Street and Lehigh Avenue when [A]ppellant, whom she did not know, pulled up in a car. He asked L.C. if she had "hair on her pussy[.]" L.C. ran to school. Later that day, L.C. told a teacher, her mother, and her grandmother what had happened. She also spoke with police and identified [A]ppellant from a group of photos shown to her.

> K.B. testified that on May [11], 2011, she was eleven years old. On that date at about 7:45 a.m., she and her six year-old brother were walking to Frederick Douglas Charter School near Ditman Street. As they walked, a red car drove up

---

[1] We do not have the benefit of a trial court opinion in this case, as the judge who presided over Appellant's trial retired. The factual summary provided herein was set forth by Appellant in his brief.

[2] Appellant was 41 years old in May of 2011.

beside her and the driver, [A]ppellant, whom she did not know, asked her if she had "hair on her pussy[.]" She and her brother quickly walked to school and [A]ppellant drove off. K.B. told a teacher, who notified K.B.'s mother and the police. K.B. later identified [A]ppellant from a group of photos shown to her by police.

T.H. testified that on May 11, 2011, she was eleven years old.[3] On that date at around 7:15 a.m., she was on a bus heading to school near Cleveland and Susquehanna Streets when she realized she forgot something at home. She got off the bus and began to walk home. A red car pulled up beside her and the driver, [A]ppellant, whom she did not know, asked her if she had "hair on her pussy[.]" Appellant then reached out the car window with his left hand and grabbed T.H.'s wrist. She put her foot against the car and pulled her wrist free. T.H. testified that [A]ppellant had "a good grip" and that it hurt, but that she was not cut or bruised. She ran home and [A]ppellant drove away. At home she told her grandmother, … who called the police. Officers came to their house and, as T.H. was outside speaking to them, she saw [A]ppellant's car drive by. She pointed out the car to the officers, who then pursued [A]ppellant and arrested him.

[3] Other Commonwealth evidence, including T.H.'s own testimony [about] her birthdate … indicate[d] that T.H. was actually twelve years old on the day in question.

Corporal Eric Reiser testified that he was the officer who arrested [A]ppellant as he was stopped at a red light. He ordered [A]ppellant out of the car, and when [A]ppellant got out, his loose sweatpants fell down. [Appellant] was not wearing underwear and the officer leaned down to pull [A]ppellant's pants up. T.H. then identified [Appellant] as the man who had approached her.

Police Officer Michael O'Brien testified that he took photographs of items found inside [A]ppellant's car on the day of his arrest. The items included binoculars and a camera in its case on the rear floor, newspapers and a trash bag on the driver's seat. These items, in addition to a mirror, were later seized pursuant to a search warrant.

Detective Linda Pace testified that she showed photo arrays on separate occasions to each of the four complainants. Each girl identified [A]ppellant. She also stated that the four

incidents occurred within a ten- to twenty-block radius in the 22nd Police District.

Appellant's Brief at 6-8 (citations to the record and some footnotes omitted).

Appellant was charged in four separate cases pertaining to each of his four victims. The cases were consolidated and he proceeded to a jury trial in June of 2013. At the close thereof, the jury convicted Appellant of the above-stated offenses. On January 23, 2014, he was sentenced to an aggregate term of 4 to 10 years' imprisonment. He filed a timely notice of appeal. As the presiding trial judge had retired, Appellant was not ordered to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and no trial court opinion was filed. Appellant raises the following four issues for our review:

1. Was not [A]ppellant erroneously convicted of four counts of unlawful contact where the trial court instructed the jury that, to be convicted of that offense, [A]ppellant must have contacted each of the four complainants with the specific intent to commit indecent assault or sexual assault, and there was insufficient evidence he contacted the complainants for that particular purpose?

2. Was not the evidence insufficient to convict [A]ppellant of luring as to the complainant T.H. as his act of grabbing her wrist was not calculated to entice or induce her to get in his car?

3. Was not [A]ppellant erroneously convicted of simple assault as to the complainant T.H. where there was insufficient evidence that [A]ppellant specifically intended to put T.H. in fear of serious bodily injury by physical menace?

4. Was not [A]ppellant erroneously convicted of corruption of minors as to the complainant Z.A. where there was insufficient evidence that his conduct tended to produce or encourage delinquent behavior on Z.A.'s part?

Appellant's Brief at 3.

Appellant's issues challenge the sufficiency of the evidence to sustain his convictions.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno,* 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

In his first issue, Appellant contends that the evidence was insufficient to sustain any of his four counts of unlawful contact with a minor. That offense is defined, in pertinent part, as follows:

> **(a) Offense defined.--**A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> > (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S. § 6318(a)(1).

The Commonwealth charged Appellant, generally, with committing unlawful contact as defined by section 6318(a)(1); it did not define what specific Chapter 31 offense(s) Appellant intended to commit when he

contacted the victims in this case.[3]  However, the trial court instructed the jury that, to find Appellant guilty of unlawful contact, it must conclude, *inter alia*, that Appellant "was intentionally in contact with a minor, and that the contact was for the purpose of engaging in an unlawful act; *that unlawful act being sexual assault and/or indecent assault* with a child under 13 years of age…."   N.T.  Trial,  6/5/13,  at  127-28  (emphasis  added).   The Commonwealth did not object to the trial court's instruction.

According to Appellant, the court's instruction narrowed the scope of his unlawful contact charges and required the Commonwealth to prove, "beyond  a  reasonable  doubt[,]  that  [he]  contacted  the  complainants  with that specific intent, that is, to commit indecent assault or sexual assault." Appellant's Brief at 13.   Appellant then discusses why the evidence was inadequate to prove that he contacted the victims with this intent.  ***Id.*** at 14-16.

Appellant offers no binding, legal authority to support his argument that the trial court's jury instruction required the Commonwealth to prove that he intended to commit indecent assault or sexual assault, rather than

---

[3] Appellant does not argue that the Commonwealth was required to specify, in the criminal information, the underlying crime that Appellant intended to commit when unlawfully contacting the minor victims.  Case law supports a conclusion that no such specificity in the charging document was necessary. ***See Commonwealth v. Reed***, 9 A.3d 1138, 1146 (Pa. 2010) (clarifying that for purposes of section 6318(a)(1), a defendant need not be separately convicted of, or even charged with, the Chapter 31 offense for which he contacted the minor).

*any* Chapter 31 offense. For instance, Appellant relies on the Third Circuit Court of Appeals' decision in **United States v. McElroy**, 644 F.2d 274, 280 (3d Cir. 1981) (concluding that where the trial court's jury charge, to which the prosecutor did not object, narrowed the definition of the charged crime, the conviction must rest on proof of the crime as defined by the court). Appellant's reliance on **McElroy** is unavailing. "Absent a United States Supreme Court pronouncement, decisions of federal courts are not binding on state courts…." **Commonwealth v. Lambert**, 765 A.2d 306, 315 n.4 (Pa. Super. 2000) (citing **Commonwealth v. Ragan**, 743 A.2d 390 (Pa. 1999); **Cambria-Stoltz Enterprises v. TNT Investments**, 747 A.2d 947 (Pa. Super. 2000)).

Moreover, the decisions by this Court that Appellant cites in support of his argument are distinguishable. For instance, Appellant relies on **Commonwealth v. Lambert**, 313 A.2d 300 (Pa. Super. 1973), where the Commonwealth specifically *charged* Lambert with corrupting the morals of a minor "by furnishing dangerous drugs." **Id.** at 301. This Court held that "[b]y specifically charging the manner by which [Lambert] was alleged to have corrupted the morals of these minors, the Commonwealth was required to prove that [he] did furnish them with dangerous drugs." **Id.** In reaching this decision, we stressed that, "[i]n criminal trials[,] the proof offered by the Commonwealth must measure up to the *charge made in the indictment*." **Id.** (emphasis added) (citing **Commonwealth v. Aurick**, 19 A.2d 920, 924 (Pa. 1941)).

- 7 -

Similarly, in the second case cited by Appellant, **Commonwealth v. March**, 551 A.2d 232 (Pa. Super. 1988), the Commonwealth added to the criminal information four general *charges* of corruption of a minor, without any statement of specific facts underlying those charges. On appeal, March argued that his defense counsel was ineffective for not asking for a bill of particulars, and this Court agreed. Our reason for this determination rested, in part, on the fact that "[w]here the bill of particulars specifically limits proof to be adduced at trial to specific acts, the Commonwealth is not permitted to obtain a conviction on the offense charged by proof of acts other than those specified in the bill." **March**, 551 A.2d at 236. We also stressed that "where an accused is *charged* with corruption by one act, and the Commonwealth does not prove that act, but proves some other act, a conviction for corruption based upon the other act cannot stand." **Id.** (emphasis added)

The holdings of **Lambert** and **March** both involve the Commonwealth's burden of proof when offenses are *charged* with specificity regarding the facts underlying those charges. Neither decision involves the circumstances of the present case, where the trial court's *jury instruction* narrowed the scope of offenses that had been charged, more generally, in

the criminal information. Appellant does not explain why the holdings of *Lambert* and *March* should extend to the specific scenario before us.[4]

From our review of those cases, it is apparent that both decisions rest on the principle that the defendant must be put on notice of the offenses *charged* against him "in order to permit him to prepare a defense, avoid surprise, and be placed on notice as to any restrictions upon the Commonwealth's proof." *March*, 551 A.2d at 235-36; *see also Lambert*, 313 A.2d at 301 ("An 'indictment is the star and compass of a criminal trial … [and it] must be a notification to the defendant of the charge he has to meet.'") (citation omitted). Here, Appellant was on notice that he was charged with four counts of unlawful contact with the intent to commit a Chapter 31 offense. Again, Appellant does not contend that the Commonwealth was required to specify, in the criminal information, the Chapter 31 offense(s) he intended to commit when contacting the minor victims. Further, Appellant's argument that this Court is constrained to assessing *only* the sufficiency of the evidence to prove he committed the specific crimes stated by the court in its jury instruction is not supported by

_____

[4] Instead, Appellant simply cites those cases, with parentheticals explaining their holdings, after stating, "a conviction for unlawful contact required proof beyond a reasonable doubt that [A]ppellant contacted the complainants with that specific intent, that is, to commit indecent assault or sexual assault. Proof of contact with a different unlawful intent would not support a conviction for this offense." Appellant's Brief at 13 (citing *Lambert, supra* and *March, supra*).

any binding legal authority. Accordingly, his first challenge to the sufficiency of the evidence is unconvincing.[5]

Next, Appellant argues that the evidence was insufficient to convict him of luring a child (specifically, T.H.) into a motor vehicle. That offense is defined as:

> **(a) Offense.--**Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures or attempts to lure a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits an offense.

18 Pa.C.S. § 2910(a).

As Appellant recognizes, section 2910 does not define what it means to "lure" a child. However, in **Commonwealth v. Hart**, 28 A.3d 898 (Pa. 2011), our Supreme Court assessed the meaning of that word in determining "whether the mere offer of an automobile ride to a child constitutes an attempt to 'lure' the child under [s]ection 2910…." **Id.** at

---

[5] Appellant offers no discussion of how the evidence was insufficient to sustain his convictions of unlawful contact with the intent to commit any Chapter 31 offense. Indeed, Appellant suggests that the evidence was sufficient to prove that he contacted the victims with the intent to commit indecent exposure, which is a Chapter 31 crime. **See** 18 Pa.C.S. § 3127; **see also** Appellant's Brief at 14 ("[I]t was purely speculative whether he intended to commit the two specified crimes or whether his intent was to commit a different offense, such as indecent exposure…."); **id.** at 16 ("While [A]ppellant contacted the complainants for an illicit purpose, the evidence did not prove beyond a reasonable doubt that he did so for the purpose of committing the crimes of sexual assault or indecent assault rather than, for example, indecent exposure, open lewdness or harassment.").

900. Initially, the Court determined that the plain meaning of the word "lure" necessarily "involves the making of a promise of pleasure or gain, the furnishing of a temptation or enticement, or the performance of some other affirmative act calculated to strongly induce another individual to take a particular action, usually and most often likely to result in his or her harm." *Id.* at 909. The *Hart* Court then elaborated how that definition of "lure" applied to the issue before it, *i.e.*, whether Hart had "lured" two young boys by simply offering them a ride on two separate occasions, without saying anything more to the boys. In holding that the facts of *Hart* were not sufficient to constitute a "lure" under section 2910, the Court explained:

> Consistent with the plain and unambiguous meaning of the term "lure," we therefore hold that an attempt to lure under Section 2910 does not occur upon the mere offer of a ride in a motor vehicle to a child, but, rather, involves only situations where a child is provided a further enticement or inducement to enter the vehicle, in addition to the offer of the ride, particularly under such circumstances which suggest the child is being led into a potentially harmful situation. … [T]his enticement or inducement may be the promise of a pleasurable reward for entry into the vehicle such as receiving money or a treat such as candy or ice cream. Likewise, a similar attractive temptation could be created with the promise of the opportunity for the child to view an object of interest like a toy, a game, or a puppy. The enticement or inducement need not necessarily be express, but could also arise where the enticement and inducement is evident from the circumstances accompanying the making of the offer.

*Id.* at 910.

Appellant seemingly construes the *Hart* decision as holding that the *only* way in which to "lure" a child under section 2910 is to order, command, or threaten the child to enter the vehicle, while also offering the child

- 11 -

inducement or enticement to do so. **See** Appellant's Brief at 18-19 (arguing that he did not lure T.H. because he "employed no form of inducement or influence to convince T.H. to enter his car. He did not order or threaten her to get in his car, nor did he make any implied or explicit promises to persuade her to do so. He never pressured her to avoid unpleasant consequences by complying with a command because he never issued such a command."). However, Appellant's interpretation ignores the **Hart** Court's holding that the broader definition of the term "lure" includes "the performance of some other affirmative act calculated to strongly induce another individual to take a particular action…." **Hart**, 28 A.3d at 909. The Court did not expound on this portion of the definition of "lure" because the facts in **Hart** did not call for such an analysis. The facts here, however, clearly satisfy that particular component of the definition of "lure" under section 2910. Namely, T.H. testified that Appellant pulled his car alongside her while she was walking, asked her if she had "hair on her pussy," and then grabbed her wrist and tried to pull her toward his car. N.T. Trial, 6/4/13, at 140, 142-43. Appellant pulled T.H. with such force that she had to "put [her] foot on the car and push[] back" to escape from his "good grip." **Id.** at 143. By this conduct, Appellant committed an "affirmative act calculated to strongly induce" T.H. to enter his vehicle, which satisfies the **Hart** Court's definition of "lure." **Hart**, 28 A.3d at 909. Therefore, the evidence was sufficient to sustain Appellant's conviction under section 2910.

In Appellant's third issue, he avers that the evidence was insufficient to prove that he committed a simple assault of T.H. Appellant was convicted of simple assault as defined by 18 Pa.C.S. § 2701(a)(3):

> **(a) Offense defined.--** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>
> …
>
> (3) attempts by physical menace to put another in fear of imminent serious bodily injury[.]

Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

Appellant contends that the evidence failed to demonstrate that he specifically intended "to put, by physical menace, T.H. in fear of imminent serious bodily injury." Appellant's Brief at 20 (citation omitted). Appellant explains:

> Although T.H. testified that she was "scared" when [A]ppellant grabbed her arm, that fact does not establish that [A]ppellant had the specific intent required under [section] 2701(a)(3). It is reasonable to infer from his actions that [A]ppellant specifically intended to prevent her from walking or running away. That he frightened her in his attempt to do so does not establish that his specific intention in grabbing her wrist was to put her in fear of imminent serious bodily injury.

Appellant's Brief at 20.

Appellant further argues that this Court's decision in **Commonwealth v. Fry**, 491 A.2d 843 (Pa. Super. 1985), "is directly on point." Appellant's Brief at 20. In **Fry**,

> a ten year old female child was walking to school with a younger brother and two friends. When she reached the school grounds, Eric Fry, age eighteen, approached her from behind, grabbed her by putting his arms around her and lifted her off the ground. When she started to kick and scream, Fry said, "shut up, you're coming with me." The child had not been acquainted previously with Fry. Two children who were serving as safety patrol members saw what was happening and ran toward Fry; whereupon, he put the child down and walked away. At trial, the child surmised that Fry intended to pull her toward a flight of stairs leading to a locker room, but she conceded that she wasn't certain about that.

**Fry**, 491 A.2d at 844.

This Court held in **Fry** that the evidence was insufficient to sustain Fry's conviction of simple assault under section 2701(a)(3), reasoning:

> In the instant case, … the only evidence of physical menace was that Fry put his arms around the child and picked her up. He did not strike or attempt to subdue her by physical means. He did not threaten to inflict bodily injury upon her. There was no evidence that serious bodily injury was imminent or that appellant intended to put the child in fear thereof.
>
> The evidence did show that [Fry] told the child to "shut up" and that he was taking her with him. The child speculated that perhaps [Fry] intended to take her toward the steps leading to the locker room. Certainly one can infer from this that a young child would be alarmed and frightened by [Fry's] conduct. However, that is not the conduct which was made criminal by 18 Pa.C.S. § 2701(a)(3). The statute required a specific intent on the part of [Fry] to put the child in fear of imminent serious bodily injury. This the Commonwealth failed to prove.

**Id.** at 845 (internal citations omitted).

- 14 -

We find the present case distinguishable from **Fry**. Namely, Appellant, a 41 year-old man, clearly attempted to subdue T.H., an 11 year-old child, by grabbing her wrist and pulling her to his car. Appellant made a very explicit, sexual comment to T.H. just prior to gripping her wrist, and held T.H. with such force that she had to put her foot against his car to gain leverage to escape his grasp. T.H. could have fallen backward and struck her head, or injured herself in some other serious manner, due to Appellant's physically restraining her in this way. Moreover, Appellant was sitting in the driver's seat of an idling vehicle when he grabbed T.H., who was standing on the sidewalk. At any moment, Appellant could have accelerated his vehicle and dragged or struck T.H., which certainly would have caused serious bodily injury to the 11-year-old child. These facts were sufficient to permit the jury to infer that Appellant had a specific intent to place T.H. in fear of immediate, serious bodily injury. Thus, the evidence was sufficient to sustain his conviction of simple assault.

In his fourth and final issue, Appellant challenges the sufficiency of the evidence to support his conviction of corrupting the morals of a minor, specifically relating to victim Z.A. That offense is defined, in pertinent part:

**(a) Offense defined.--**

(1)(i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor

> in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S. § 6301(a)(1)(i).

Appellant maintains that his conduct of "staring at and following [Z.A.] in a store, and beckoning her to approach him in his car" does not amount to acts which would "tend to produce delinquent behavior in Z.A." Appellant's Brief at 23. As the Commonwealth points out, however,

> it was *not* required to prove that Z.A. may engage in delinquent behavior as a result of [Appellant's] conduct. ***See Commonwealth v. Slocum***, 86 A.3d 272, 279 (Pa. Super. 2014) (rejecting argument that evidence was insufficient to convict appellant of corrupting a minor because he supposedly never "encouraged the victim to commit a delinquent act"). Indeed, this Court has specifically cautioned against the "use of the term 'delinquent' in this context" as "a child under ten years of age," like Z.A., "cannot commit a delinquent act." ***Slocum***, 86 A.3d at 280 n.11. A person is guilty under 18 Pa.C.S. § 6301(a) if he corrupts the morals of a minor *or* encourages a minor to commit a crime.

Commonwealth's Brief at 19.

We agree with the Commonwealth that our decision in ***Slocum*** negates Appellant's argument herein. We also note that in ***Commonwealth v. Decker***, 698 A.2d 99 (Pa. Super. 1997), this Court explained:

> In deciding what conduct can be said to corrupt the morals of a minor, the common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it. Furthermore, corruption of a minor can involve conduct towards a child in an unlimited number of ways. The purpose of such statutes is basically protective in nature. These statutes are designed to cover a broad range of conduct in order to safeguard the welfare and security of our children. Because of the diverse types of conduct that must be proscribed, such

- 16 -

statutes must be drawn broadly. It would be impossible to enumerate every particular act against which our children need be protected.

*Id.* at 101 (internal citations and quotation marks omitted).

Here, at the time of Z.A.'s encounter with Appellant, she was a 9 year old girl. She was unaccompanied in a convenience store when she saw Appellant "peeking around the corner" and staring at her. N.T. Trial, 6/4/13, at 43. Z.A. did not know Appellant. *Id.* at 44. When Z.A. took the items she was purchasing to the counter to pay, Appellant "walked up" and "was staring right at [her]." *Id.* at 45. Appellant did not have any items in his hands to purchase, yet he stood "extra close" to Z.A., and was nearly touching her, as she paid for her things. *Id.* at 46, 47. Z.A. stated that Appellant was facing her so that the "front part" of his body was almost against her right side. *Id.* at 46. Z.A. felt scared and "just wanted to get out of the store." *Id.* at 47. Appellant exited the store before Z.A., and when she, too, went outside, she saw Appellant sitting in his car "just staring" at her. *Id.* at 47-48. Appellant then pulled up "right next to [her]" and said, "Come here." *Id.* at 51. Z.A. ran and Appellant drove away. *Id.* at 52. We agree with the Commonwealth that Appellant's "conduct was plainly offensive to any common sense of decency, propriety, and morality." Commonwealth's Brief at 18. Accordingly, his conviction for corruption of a minor was supported by sufficient evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/13/2016