J-A28009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICHARD SCOTT CARVER | : | No. 377 MDA 2018 |

Appeal from the Order Entered January 30, 2018
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0001646-2017

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

CONCURRING AND DISSENTING MEMORANDUM BY OLSON, J.:

**FILED FEBRUARY 04, 2019**

I join the learned Majority's decision reversing the trial court's order granting Appellee's petition for a writ of *habeas corpus* with respect to the indecent exposure charge. I believe, however, that the trial court erred by granting Appellee's petition for a writ of *habeas corpus* with respect to the child luring charge. I therefore concur in part and dissent in part.[1]

A pretrial petition for a writ of *habeas corpus* should be granted when, viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth fails to set forth a *prima facie* case of guilt. ***Commonwealth***

---

[1] The Commonwealth does not challenge the trial court's order granting Appellee's petition for a writ of *habeas corpus* with respect to the interference with child custody charge.

***v. Dantzler***, 135 A.3d 1109, 1111 (Pa. Super. 2016) (*en banc*) (citations omitted). "A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." ***Commonwealth v. Huggins***, 836 A.2d 862, 866 (Pa. 2003) (citation omitted). Because the evidentiary sufficiency for a *prima facie* case presents a pure question of law, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Karetny***, 880 A.2d 505, 513 (Pa. 2005) (citation omitted).

I begin with the text of the relevant statute. "Unless the circumstances reasonably indicate that the child is in need of assistance, a person who lures or attempts to lure a child into a motor vehicle or structure without the consent, express or implied, of the child's parent or guardian commits a misdemeanor of the first degree." 18 Pa.C.S.A. § 2910(a). The statute does not define the term "lure." Hence, both this Court and our Supreme Court have described what constitutes luring for purposes of section 2910.

Our Supreme Court analyzed what constitutes luring in ***Commonwealth v. Hart***, 28 A.3d 898 (Pa. 2011). Our Supreme Court noted that "a 'lure' involves the making of a promise of pleasure or gain, the furnishing of a temptation or enticement [.]" ***Id.*** at 909. The Court indicated that there must be some "additional and extra element of powerful persuasion designed to influence the person to take action". ***Id.*** Thus, the Court held

"that an attempt to lure under [s]ection 2910 does not occur upon the mere offer of a ride in a motor vehicle to a child, but, rather, involves only situations where a child is provided a further enticement or inducement to enter the vehicle[.]" *Id.* at 910. Our Supreme Court explained that

> this enticement or inducement may be the promise of a pleasurable reward for entry into the vehicle . . . . Likewise, a similar attractive temptation could be created with the promise of the opportunity for the child to view an object of interest . . . . The enticement or inducement need not necessarily be express, but could also arise where the enticement and inducement is evident from the circumstances accompanying the making of the offer.

*Id.* Moreover, "an enticement or inducement may take the form of a directive or a command to a child to enter a car, which suggests deleterious consequences to the child if he or she does not obey." *Id.*

Although not directly at issue in *Hart*, our Supreme Court stated that luring also includes "the performance of some other affirmative act calculated to strongly induce another individual to take a particular action, usually and most often likely to result in his or her harm." *Id.* at 909. The Commonwealth, however, need not "separately prove that a person who attempts to lure a child into an automobile did so with the purpose of harming the child." *Id.* at 911. Applying its holding to the facts in *Hart*, our Supreme Court held that the defendant did not lure two boys by offering them rides to school or a local convenience store on two separate occasions. *Id.* at 912.

After our Supreme Court's interpretation of the term "lure" in *Hart*, this Court addressed twice whether specific factual scenarios were sufficient to

prove that defendants lured a child into a motor vehicle. In the first case, the defendant pulled alongside an 11-year-old girl and "asked her if she had 'hair on her pussy.' [The defendant] then reached out the car window with his left hand and grabbed [the girl's] wrist." *Commonwealth v. Walker*, 139 A.3d 225, 228 (Pa. Super. 2016). This Court held that this evidence was sufficient to convict the defendant of luring a child. This Court reasoned that, although the defendant did not offer the child an enticement, he nonetheless took an affirmative step, *i.e.*, grabbing the child's hand, likely to result in her harm. *Id.* at 232.

The second case of *Commonwealth v. Montanez-Castro*, 2018 WL 5118083 (Pa. Super. Oct. 22, 2018) was issued after the trial court granted Appellee's petition for a writ of *habeas corpus* and after the briefing in this Court was complete. Thus, neither the trial court nor the parties had the benefit of that decision. In that case,

> two minors . . . were walking to school. … As they were walking along South Harrisburg Street, a white car sharply turned left from Walnut Street onto South Harrisburg Street. It pulled up to the curb beside them, with the driver's side window closest. The window was open and [the defendant] asked them to pick a number. The minors stopped walking and after being confused, each picked a number. After [one of the girl's] picked a number, [the defendant] said "Mommy, you were right" and that she won a prize. . . . [The defendant] held out a soda can and water bottle with no label and told her to pick one. [The girl] refused. Both girls recall that [the defendant] held the drinks out with bent elbows, not arms extended, and was fairly close just several feet away. [Both girls] recognized that [the one girl] would have to approach the car, though, to take one of the drinks. [The girls] were nervous and scared after this interaction and walked quickly to school. [The defendant] never asked [the girls] to enter the

car or go anywhere with him. He never asked them to approach closer, he never threatened them, he never commanded or directed them to do anything, and he never opened the door. [The defendant] did not follow them. Upon arriving at school, [one of the girls] told the principal what happened.

*Id.* at *1 (paragraph break omitted). This Court stated that we must examine the totality of the circumstances when determining if a defendant lured a child. *Id.* at *3. Relying on the facts that the defendant turned his vehicle around to pull alongside the girls, told one of the girls that she won a prize, held the alleged prize out of his car window in such a way as to require the girl to approach the defendant to retrieve it, and called the girl "Mommy," this Court held that the evidence was sufficient to convict the defendant of luring a child. *Id.* Specifically, this Court concluded:

> When viewed in a light most favorable to the Commonwealth . . ., the totality of the circumstances allows for the reasonable inference that [the defendant] did not stop two random girls on their way to school to give them a drink and send them on their way. [The defendant] was, instead, attempting to entice at least one girl to come within his area of control as he waited in his car, and he used his apparent brand of charm and a bottled drink – kept closely to his side – as a lure to achieve this end. . . . Therefore, it was reasonable for the finder of fact to conclude, beyond a reasonable doubt, that [the defendant's] affirmative actions, manipulative and suggestive words, and enticements were designed to gain the minor girl's entry into his car to her own detriment.

*Id.*

It is clear from the foregoing precedent that the facts and circumstances surrounding the encounter between a defendant and a minor are critical in determining whether a luring occurred. In **Hart**, the fact that the defendant

merely asked the boys on two occasions whether they wanted a ride was insufficient to meet the definition of luring. At the opposite end of the factual spectrum is the **Walker** case where the defendant grabbed the child's wrist and attempted to pull her to him. This was clearly found to constitute luring. In the middle of the spectrum lie the facts in **Montanez-Castro**, in which the defendant turned his car around to approach the minors, began to talk with them in a relaxed, casual manner, offered a prize to one of the girls, and attempted to get the girl to approach his vehicle so that she would be closer to him.

After carefully reviewing the record in this case and the relevant case law, I believe that the facts presented at the preliminary hearing were sufficient to provide probable cause that Appellee attempted to lure the child.

Unlike in **Hart**, Appellee did not merely offer the child a ride. Instead, he took additional steps that a fact-finder could conclude were enticements for the child. First, Appellee passed the child on the street, then made a U-turn so as to bring the car around and pull up next to the child. N.T., 11/21/17, at 14-15. Appellee then attempted to engage the child in a friendly conversation. He first greeted the child with "Ssup Ni**a"[2] and then asked the child whether he was excited for school. *Id.* at 15. Appellee then rolled

---

[2] The child testified on direct examination that Appellee first said "Ssup Ni**er". N.T., 11/21/17, at 8. On cross-examination, the child indicated that Appellee said "Ni**a", not "Ni**er". *Id.* at 15.

down his car window, put his hand out, and asked the child to give him a high five. *Id.*; *see also id.* at 16. When the child declined, Appellee commanded him to take his hand. *Id.* at 8; *see also id.* at 16-17, 19-20.

These facts are most similar to *Montanez-Castro*. As in *Montanez-Castro*, Appellee turned his car around after passing the child on the street and pulled alongside of the child so that the driver's side window was next to the child. He then attempted to engage the child in a friendly conversation after which he sought to entice the child to come closer to his vehicle and within his area of control by extending his hand from the driver's side window and asking for a high five. When the child refused, he commanded the child to grab his hand. This is similar to the defendant in *Montanez-Castro* attempting to get the girl to grab a soda can or water bottle held out of the window.[3] Here, as in *Montanez-Castro*, Appellee employed an "apparent brand of charm" together with manipulative words and gestures which reasonably could be viewed as enticements calculated to induce the child's movement toward Appellee's area of control and ultimately into his vehicle. Thus, I believe that, when viewed in a light most favorable to the Commonwealth, the evidence produced at the preliminary hearing was

_____

[3] The difference between this case and *Montanez-Castro* is that in *Montanez-Castro* the defendant offered the soda can and water bottle as a "reward" for "winning" a game while in this case Appellee did not offer a high five as a reward. In my opinion, this distinction is insufficient to differentiate the outcome in this case from the outcome in *Montanez-Castro*.

sufficient to show probable cause that Appellee was attempting to lure the child to enter the vehicle.[4] Hence, it was sufficient to meet the Commonwealth's *prima facie* burden of proof.

I acknowledge that this is a close case with respect to the luring a child charge. However, based on the totality of the circumstances and the relevant case law, I believe that the Commonwealth provided sufficient evidence to show that there was probable cause that Appellee lured the child. Therefore, I disagree with the learned Majority's decision to affirm the trial court's order granting Appellee's petition for a writ of *habeas corpus* with respect to that charge. As I agree with the Majority's decision to reverse the grant of Appellee's petition for a writ of *habeas corpus* with respect to the indecent exposure charge, I respectfully concur in part and dissent in part.

---

[4] Bearing in mind that section 2910(a) addresses the luring of children who likely do not possess the resolve of an adult to resist or avoid potentially adverse encounters, the interpretative case law has adopted an expansive view of the term "lure" to include not only express demands or requests, but also attempts to furnish a temptation or enticement or any acts calculated to induce action by a child. **See Hart**, 28 A.3d at 909.