J-S13018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT HENRY JOHNSON, JR. | : | |
| | : | |
| Appellant | : | No. 970 WDA 2018 |

Appeal from the Judgment of Sentence Entered May 24, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0006041-2017

BEFORE:   BENDER, P.J.E., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.:                              **FILED MAY 14, 2019**

Robert Henry Johnson, Jr., appeals from the judgment of sentence imposed May 24, 2018, in the Allegheny County Court of Common Pleas.  The trial court sentenced Johnson to an aggregate term of two to four years' imprisonment, following his jury conviction of simple assault and indecent assault for the April 10, 2017, attack on his former girlfriend, A.G.  On appeal, Johnson challenges the sufficiency of the evidence supporting his conviction of simple assault, the weight of the evidence supporting his conviction of indecent assault, and the trial court's erroneous imposition of sexual offender registration requirements regarding his conviction of simple assault.  For the reasons below, we vacate the judgment of sentence, in part, and remand for the trial court to enter a corrected sentencing order.  In all other respects, we affirm.

_____
* Retired Senior Judge assigned to the Superior Court.

The facts underlying Johnson's conviction, as developed during his jury trial, are as follows. On the evening of April 10, 2017, the victim, A.G., and Johnson were in the home where they both lived. A.G. testified that while the two had dated for two years, she considered them separated for about a year and was dating another man, although she still lived with Johnson.[1] She acknowledged Johnson still considered them to be dating. *See* N.T., 2/27-28/2018, at 48-50.

At approximately 8:00 p.m., A.G. and Johnson began fighting. A.G. testified Johnson asked her if she wanted to sell marijuana, and when she refused, "[h]e got really irate about it." *Id.* at 51. A.G. claimed Johnson began "chasing" her around a table before he "threw [her] on the living room chaise." *Id.* Although she pleaded with him to stop, he stated, "I don't give an F, I'm going to jail anyway." *Id.* He then forced her upstairs on her back. At some point, Johnson ripped her panties off her. *See id.* at 51-52. A.G. described what happened next as follows:

> He got me on the bed. He forced me on the bed. He had my arms down. Once he got on top of me he had me hanging off the bed. He literally put his tongue in my mouth and I bit it really hard. So then after that he couldn't perform so he ended up getting Vaseline and he made me, you know, rub his penis.

*Id.* at 52. A.G. testified Johnson tried to penetrate her, but he was unable to maintain an erection. *See id.* at 53. He then forced oral sex on her, while she was "clenching [her] knees on to his temples." *Id.* at 52. All the while,

---

[1] A.G. stated she intended to move out of the home in June when her son finished school. *See* N.T., 2/27-28/2018, at 49.

A.G. begged him to stop. *See id.* at 52-53. When he eventually did so, A.G. went to the bathroom to wipe herself off. *See id.* at 53.

When A.G. went downstairs, she asked Johnson where her underwear and pants were. He responded by stating, "you are not going to use this as evidence." *Id.* at 54. She then retreated upstairs to dress. When she returned downstairs again, Johnson said to her, "I know you want to call the police," and one of them dialed 911 on her cell phone.[2] *Id.* As A.G. waited for the police to arrive, Johnson stuffed her underwear and pants in a duffle bag and left the residence. When the police arrived, A.G. told them Johnson raped her. *See id.* at 56.

Pittsburgh Police Officer Reggie Eiland responded to the 911 call. He stated A.G. was "shaking, crying and upset" when he arrived. *Id.* at 80. Officer Eiland observed bruises on A.G.'s "right arm and on the inside of her left thigh." *Id.* at 81. He described the bruises as "red marks and dark bruising as if someone was struck or hit." *Id.* at 82. After A.G. explained what had happened, the officer requested a sergeant to come to the scene, and Sergeant Tracey Clinton responded.[3] While Sergeant Clinton was speaking to the victim, the victim received a phone call from Johnson. A.G. handed the phone to Sergeant Clinton who asked Johnson to return to the

---

[2] Under cross-examination, A.G. admitted she told the 911 operator that she was not injured. However, at trial, she clarified she was scared because Johnson was still there with her. *See* N.T., 2/27-28/2018, at 70.

[3] Sergeant Clinton was formerly a sexual assault detective. *See id.* at 84.

home so they could discuss the incident. She said Johnson replied, "No, I'm not coming because I will go to jail for what I did." *Id.* at 85.

A.G. was then transported to the hospital where Sexual Assault Nurse Examiner ("SANE") Betty Jessop performed a sexual assault examination, and took photos of contusions on A.G.'s right upper arm, left inner calf, posterior right leg, and left inner elbow. *See id.* at 102-103. Nurse Jessop testified the bruises appeared to be fresh because there was "redness and a deeper bruise which is black to brown," rather than a "yellowing to green" bruise, which is generally not a fresh bruise. *Id.* at 104. She also explained that while there was no trauma discovered during the genital exam, that is not unusual in sexual assault cases. *See id.* Under cross-examination, Nurse Jessop agreed that she could not state definitively when A.G. received the bruises that she photographed. *See id.* at 109-110. However, she explained under redirect that the different colors of the bruises reflected the force of the trauma, not the age of the bruise: "The more force into the soft tissue, the darker the bruise." *Id.* at 111.

The Commonwealth submitted cervical and rectal swabs taken from A.G. for DNA testing. Forensic scientist Kristin McCann testified she compared DNA samples from Johnson, as well as A.G.'s boyfriend, to the samples obtained during the sexual assault exam. *See id.* at 117-118. A.G.'s boyfriend was identified as the major contributor to the sperm sample obtained from the

cervical exam.[4]   McCann could reach no conclusion as to the contributor of skin cell samples, and a minor sperm cell contributor, because the samples were too small to be identified.  *See id.* at 123-124.

As noted above, the jury found Johnson guilty of simple assault and indecent assault, but acquitted him of the remaining charges.  On May 24, 2018, he was sentenced to a consecutive term of one to two years' imprisonment on each conviction.  On June 1, 2018, Johnson filed a post-sentence motion challenging the weight of the evidence supporting his convictions.  The trial court promptly denied the motion on June 4, 2018.  This timely appeal followed.[5]

In his first issue on appeal, Johnson contends the evidence was insufficient to sustain his conviction of simple assault.  Our standard of review is well-settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense.  Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder.  The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

_____

[4] A.G. admitted she had sex with her then boyfriend within seven days of the assault.  *See* N.T., 2/27-28/2018, at 72.

[5] On July 10, 2018, the trial court ordered Johnson to file a concise statement of errors complained of on appeal.  Johnson complied with the court's directive and filed a concise statement on August 3, 2018, 21 days after receiving the trial transcript.

*Commonwealth v. Walker*, 139 A.3d 225, 229 (Pa. Super. 2016), *appeal denied*, 158 A.3d 1243 (Pa. 2016) (citations omitted).

Pursuant to Section 2701 of the Crimes Code, "a person is guilty of [simple] assault if he … attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

> The Commonwealth need not establish the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances, which reasonably suggest that a defendant intended to cause injury.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012) (internal citations omitted).

Here, Johnson argues the Commonwealth "failed to offer any evidence that he caused or attempted to cause an injury to [the victim]." Johnson's Brief at 16. He emphasizes the victim never testified at trial about her bruises, *i.e.*, how she got them or who caused them. *See id.* at 19. Furthermore, although the SANE nurse documented bruising on the victim's arms and legs, she acknowledged "she could not determine when the bruises occurred." *Id.* Moreover, the victim told the 911 operator she was not injured. *See id.* at 16. Accordingly, Johnson insists "the Commonwealth failed to show [he] was the but-for cause of complainant's injuries." *Id.* at 19. Rather, he asserts:

> The sum total of the Commonwealth's evidence is that complainant had last been with Mr. Johnson and that she was then found to have bruises. This is not enough to establish the heightened burden of causation in a criminal case.

*Id.* at 20.

In addressing the sufficiency claim, the trial court noted Johnson ignored the testimony of the victim, which revealed "a physical struggle leading up to and during the sexual assault." Trial Court Opinion, 10/3/2018, at 3. We agree. A.G. testified Johnson chased her around the table and then "threw her on the living room chaise" when she refused to sell marijuana for him. N.T., 2/27-28/2018, at 51. He pushed her up the stairs on her back before forcing her on the bed, and holding her arms down as he attempted to sexually assault her. *See id.* at 52. Furthermore, both the responding police officer and the SANE nurse observed, and documented, bruises on her arms and legs. *See id.* at 81-82, 102-104. *See also id.* at 57-58 (A.G. responding "Yes" when asked when asked if they took photos of her injuries during sexual assault exam). Viewed in the light most favorable to the Commonwealth, as verdict winner, we agree the evidence was sufficient to demonstrate beyond a reasonable doubt that Johnson attempted to inflict bodily injury upon A.G. in order to force her to submit to his sexual assault.[6] Accordingly, Johnson's first issue fails.

---

[6] *See In re M.H.*, 758 A.2d 1249, 1252 (Pa. Super. 2000) (affirming adjudication of delinquency for simple assault when juvenile grabbed school aide's arm "in a clearly aggressive fashion, and pushed her against a wall" resulting in bruising), *appeal denied*, 766 A.2d 1250 (Pa. 2001).

Next, Johnson challenges the weight of the evidence supporting his conviction of indecent assault.[7]  When we review a challenge to the weight of the evidence supporting a conviction, our review is limited to the "trial court's exercise of discretion."  **Commonwealth v. Roane**, ___ A.3d ___, ___, 2019 PA Super 56, *2 (Pa. Super. Feb. 22, 2019) (quotation omitted).  Indeed,

> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.  The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility.

**Id.** (internal punctuation and citations omitted).

> Moreover, when a trial court finds that the evidence was not against the weight of the evidence, we must give the gravest consideration to the trial court's conclusion because it is the trial court, and not the appellate court, that "had the opportunity to hear and see the evidence presented."  Furthermore, a defendant will only prevail on a challenge to the weight of the evidence when the evidence is "so tenuous, vague and uncertain that the verdict shocks the conscience of the court."

**Commonwealth v. Cramer**, 195 A.3d 594, 600–601 (Pa. Super. 2018) (internal citations omitted).

In the present case, Johnson maintains his indecent assault conviction was against the weight of the evidence because the Commonwealth presented "minimal evidence" to corroborate the victim's version of events, which Johnson insists, contained "significant and glaring inconsistencies."  Johnson's Brief at 21.  He notes the victim claimed she was afraid of Johnson and stated

---

[7] We note Johnson properly preserved this claim by raising it in a timely filed post-sentence motion.  **See** Pa.R.Crim.P. 607(A)(3); Omnibus Post-Sentence Motion, 6/1/2018, at 2-3.

they had been separated for about a year, but continued to live with him and share his bed. *See id.* at 21. Moreover, he emphasizes her testimony describing her resistance to Johnson's advances was "vague," and she did not explain the time gap between the assault (8:00 p.m.) and when the police arrived (10:00 p.m.). *See id.* at 26, 27. With regard to the Commonwealth's purported evidentiary deficiencies, Johnson notes the Commonwealth neglected to test for his DNA on the victim's bed sheets or the item she allegedly used to wipe herself off, nor did it test her for the presence of Vaseline to corroborate her story. *See id.* at 24. Johnson contends these inconsistencies and omissions, coupled with the fact that the victim admitted Johnson was the one who dialed 911,[8] support his assertion that he is entitled to a new trial. *See id.* at 28.

The trial court addressed Johnson's weight claim as follows:

> [Johnson's] contention that a single witness is incapable of providing sufficient evidence to support a conviction is not only unsupported by case law, but is contrary to statute. Title 18 Pa.C.S. § 3106 provides: "The credibility of a complainant of an offense under this chapter [dealing with sexual offenses] shall be determined by the same standard as is the credibility of a complainant in any other crime. The testimony of a complainant need not be corroborated in prosecutions under this chapter. No instructions shall be given cautioning the jury to view the complainant's testimony in any other way than that in which all complainants' testimony is viewed."

---

[8] We note the victim stated that although Johnson dialed 911 on her phone, she believed she was the one who hit the "send" button to initiate the call. *See* N.T., 2/27-28/2018, at 68, 70.

- 9 -

A person is guilty of Indecent Assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person, or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and, as charged in the present case, does so without the complainant's consent. 18 Pa.C.S. § 3126(a)(1).

The victim testified at trial about multiple acts by [Johnson] that would satisfy the elements of Indecent Assault and she was consistent in her accounts, as demonstrated by the testimony of the police and nurse witnesses. As cited above, a victim's testimony need not be supported and the jury, which has exclusive province in determining credibility, clearly found [A.G.] credible. The jury's verdict, in and of itself, indicates that they appropriately weighed her testimony along with the other evidence submitted at trial. Thus, the Court did not err in denying the Post Sentence Motion filed by [Johnson].

Trial Court Opinion, 10/30/2018, at 5-6.

Bearing in mind our standard of review, we find Johnson has failed to establish the trial court abused its discretion in denying his challenge to the weight of the evidence. **See Roane**, **supra**. Although Johnson acknowledges that a sexual assault victim's testimony need not be corroborated by physical evidence and a victim need not prove she resisted her attacker,[9] he ignores these principles when presenting his argument. As the trial court stated in its opinion, the version of events A.G. provided at trial was consistent with the story she told both the police, as reflected in the probable cause affidavit, and the SANE nurse, as reflected in notes from the examination. **See** Criminal Complaint, 4/11/2017, Probable Cause Affidavit at 2; N.T., 2/27-28/2018, at

_____

[9] **See** Johnson's Brief at 23 n.2, 25 n.3.

- 10 -

51-54, 96-97. The credibility of her story was for the jury to evaluate.[10] Accordingly, we conclude Johnson failed to demonstrate the trial court abused its discretion in denying his weight of the evidence challenge.

Lastly, Johnson asserts his sentence is illegal because the trial court improperly imposed a SORNA registration requirement on his conviction of simple assault, a non-SORNA conviction. We agree.

As noted above, Johnson was convicted of both indecent assault and simple assault. Under SORNA, a conviction of indecent assault, pursuant to Section 3126(a)(1), is a Tier 1 sexual offense, which subjects the defendant to a registration period of 15 years. *See* 42 Pa.C.S. §§ 9799.14(b)(6), 9799.15(a)(1). Simple assault, however, is not a registerable offense. *See* 42 Pa.C.S. § 9799.14.

At the sentencing hearing, the attorney for the Commonwealth stated that based on Johnson's conviction, "he must register under SORNA for 15 years." N.T., 5/24/2018, at 5. After the court insured defense counsel reviewed the presentence investigation report with Johnson, the following exchange took place:

---

[10] Johnson underscores the fact that, at the preliminary hearing, A.G. testified he ejaculated during their encounter, but she changed her testimony at trial. *See* Johnson's Brief at 24. However, Johnson cross-examined A.G. regarding this fact at trial, and she explained that she "got it mixed up" at the earlier hearing. N.T., 2/27-28/2018, at 66. Indeed, both the responding police officer and the SANE nurse testified A.G. told them Johnson did not ejaculate. *See id.* at 96, 142.

THE COURT:  And did you also complete with [Johnson] a form setting forth his obligation under SORNA as a registrant?

[Defense Counsel]:  Not until you sentence him on that, Your Honor.  I didn't have the opportunity to do that.

THE COURT:  All right.

[Prosecutor]:  I have a form that I filled out that I left for [defense counsel] there.

[Defense Counsel]:  I could just do that right now.

Your Honor, we have the form for you.
…
THE COURT:  All right.  So, Mr. Johnson, did you have an opportunity to review your obligations under the Sexual Offender Registration Notification Act that are contained in this form?

[Johnson]:  Yes.

*Id.* at 6-7.  The court then proceeded to inform Johnson of his registration requirements.  *See id.* at 6-9.

Nevertheless, as the Commonwealth concedes, "the transcripts do not clarify [under] which conviction the registration applied," noting that, "presumably the Commonwealth, defense counsel and the court were all aware that the indecent assault conviction was the relevant conviction." Commonwealth's Brief at 28.  However, the written sentencing order indicates the SORNA 15-year registration requirement applies to both convictions.  *See* Order, 5/4/2018.  The registration requirement is listed as a condition under Count 5 - simple assault, while Count 6 – indecent assault states, "Same conditions as count 5 apply."  *Id.*  Thus, on the face of sentencing order, the court improperly applied the SORNA registration requirements to Johnson's simple assault conviction.  Although it seems clear this was simply a

scrivener's error, "[t]he written sentencing order, signed by the trial judge, constitutes the sentence imposed by the court." ***Commonwealth v. Motley***, 177 A.3d 960, 962 (Pa. Super. 2018). ***See also Commonwealth v. Borrin***, 80 A.3d 1219, 1226 (Pa. 2013) ("In Pennsylvania, the text of the sentencing order, and not the statements a trial court makes about a defendant's sentence, is determinative of the court's sentencing intentions and the sentence imposed.").

Accordingly, because the sentencing order reflects the trial court illegally imposed SORNA registration requirements on Johnson's simple assault conviction, we vacate the judgment of sentence, in part, and remand for the trial court to impose a corrected order, which properly reflects Johnson's SORNA registration requirements. In all other respects, we affirm.

Judgment of sentence vacated in part, and affirmed in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/14/2019